IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| USSAMA A. MANDO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-88-SM |
| | ) | |
| ANDREW M. SAUL, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Ussama A. Mando (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. See 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 10, 14.[1] Plaintiff takes issue with the ALJ's residual functionality capacity assessment[2] and his treatment of Plaintiff's subjective statements. Doc. 19, at 13-22. After a careful review of the record (AR), the parties' briefs, and the relevant authority, the court reverses the

---

1 Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the Administrative Record will refer to its original pagination.

2 Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

Commissioner's decision and remands the case for further review. *See* 42 U.S.C. § 405(g).

I. Administrative determination.

A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

## C. Relevant findings.

### 1. Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 12-26; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had the following severe impairments: degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; diabetes mellitus type 2; depression; and anxiety;

(2) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity for light work except he could only stand/walk up to six hours in an eight hour day, could sit up to six hours in an eight hour day, could no more than frequently stoop or climb ramps/stairs, could no more than occasionally crawl or climb ladders/ropes/scaffolds, and could perform and follow simple and detailed tasks and instructions;

(4) could not perform his past relevant work as a restaurant manager or cook as Plaintiff had actually or generally performed them;

(5) could perform jobs that exist in substantial numbers in the national economy, such as lunch cook, short order cook, and cafeteria/food service worker; and thus

(6) had not been under a disability as defined by the Social Security Act from May 10, 2015 through December 28, 2017.

3

AR 14-26.

### 2. Appeals Council's findings.

The SSA's Appeals Council denied Plaintiff's request for review, so the ALJ's unfavorable decision is the Commissioner's final decision here. *Id.* at 1-5; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). A court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

4

B.  Issue for judicial review.

Plaintiff raises two issues on appeal. First, Plaintiff contends the ALJ erred in determining Plaintiff's RFC by (a) failing to consider and/or properly analyze relevant medical evidence, and (b) failing to account for Plaintiff's limited cervical mobility. Doc. 19, at 13-16. Second, Plaintiff argues the ALJ improperly assessed his subjective statements by failing to consider pertinent evidence which supported Plaintiff's statements. Doc. 19, at 17-21. The court agrees the ALJ erred in failing to properly consider relevant medical evidence pertinent to Plaintiff's RFC.

## III. Plaintiff's history.

### A.  Administrative hearing.

At the administrative hearing held on July 20, 2017, Plaintiff testified that the neck and back injuries he suffered as a result of a car accident on May 10, 2015, cause him ongoing pain including numbness and shooting pain in his extremities. AR 38-41, 43, 47. He explained that neither physical therapy nor steroid injections, which he had to discontinue due to vision complications, had provided him with lasting relief from the pain and pain medication made him drowsy and forgetful. *Id.* at 38, 40, 45-46. He testified he had extremely limited motion in his neck and had trouble looking up and down for long periods of time. *Id.* at 47-48. He stated that he can stand and walk for a while to relieve some numbness and pain but gets tired easily and must sit or lie

down. *Id.* at 40-41, 43, 48. He stands and sits in about fifty/fifty increments. *Id.* at 41. He stated he intended to have surgery, as Surgeon Scott M. de la Garza recommended to him in June of 2017, as soon as he was able. *Id.* at 46, 50, 625-26.

Vocational Expert Margaret Kelsay testified that if Plaintiff required frequent breaks from work or needed to lie down or recline twenty to twenty-five percent of the work day that this precluded both his past work as a restaurant manager and other light and/or sedentary work within his skill set. *Id.* at 52-54.

### B. Medical history.

Plaintiff's medical records indicate he sought treatment for his neck and back pain after his 2015 car accident. *Id.* at 390-97, 438-41. A July 2015 cervical spine MRI revealed "broad-based central disc protrusion at C4-5 with focal disc herniation" and "broad-based disc protrusion/herniation at C5-6 with mild to moderate C4-5 and a moderate to severe C5-6 central stenosis with severe bilateral foraminal stenosis at C5-6." *Id.* at 272, 278. The lumbar spine MRI revealed "multiple level mild degenerative changes at L1-2, L2-3, and L3-4 with a broad-based annular disc bulge and a central L5-S1 disc protrusion with a moderate L5-S1 stenosis and varying degrees of moderate facet arthropathy." *Id.* at 272, 277.

Dr. Phillip Knight treated Plaintiff from the time of his accident through June of 2016. *Id.* at 280-81. Dr. Knight referred Plaintiff for pain management and possible surgical intervention. *Id.* at 281.

Surgeon Robert Remondino's physical examination of Plaintiff on September 25, 2015, indicated Plaintiff's neck range of motion was "restricted in all directions including flexion, extension, rotation, and bending," and his back range of motion was "limited to 30 degrees of flexion and 5 degrees of extension," despite nine rounds of physical therapy and at least one steroid injection. *Id.* at 260-69, 271-72, 398-404. Dr. Remondino's examination in November of 2015 revealed Plaintiff had "severely diminished cervical range of motion secondary to pain" and that Plaintiff's pain had "progressively worsened with time." *Id.* at 274-76. Dr. Remondino recommended surgery. *Id.* at 276.

Records from Plaintiff's subsequent visits to his family doctor for regular check-ups, allergy, sinus, and cold symptoms, spanning November 24, 2015 through March 8, 2017, reveal various reports of either no back pain, some back pain, or both. *Id.* at 435 (negative for back pain), 431-33 (both), 427-29 (both), 423, 425 (negative for neck or back pain), 592 (negative for back pain), 596 (negative for back pain). In February of 2016, Plaintiff received a steroid injection to treat his neck and back pain. *Id.* at 405-13. His steroid injection

7

in July of 2016 was his last, however, because his vision had been negatively impacted. *Id.* at 414-21, 550-52.

Plaintiff returned to Dr. Knight in June of 2016 after he had "completed treatment with all doctors." *Id.* at 282. Dr. Knight released Plaintiff from his care after Plaintiff reported he "felt he was as good as he was going to get." *Id.* during this last examination the Plaintiff had "[f]ull range of motion" in his upper and lower extremities. *Id.* at 283. His back evaluation revealed twenty-nine degrees of flexion, ten degrees of extension, and ten degrees of lateral bending on the right and the left. *Id.* In Dr. Knight's opinion Plaintiff had a fifty-eight percent "permanent whole man impairment" due to his "loss of range of motion to his neck, with pain, sensory loss and loss of strength." *Id.* at 283. He further opined Plaintiff had fifty percent "permanent whole man impairment" for loss of range of motion to the back, with pain, sensory loss and loss of strength." *Id.* Dr. Knight stated Plaintiff would need continued medical treatment to "maintain a stable condition and avoid further deterioration." *Id.* at 284.

In the fall of 2016, Dr. Evette Budrich reviewed Plaintiff's July 27, 2016, function report and his medical records. *Id.* at 59-70. Dr. Budrich concluded Plaintiff's subjective reports of his pain and activity level were only partially consistent with the medical evidence and Plaintiff retained the ability to

perform light work some exertional limitations and "return to his past work." *Id.* at 64, 66-69.

Upon reconsideration, Dr. James Metcalf agreed that Plaintiff's subjective complaints of his pain and activity level were only "partially consistent" with the medical evidence. *Id.* at 80, 83. Dr. Metcalf concluded that Plaintiff retained the ability to perform his past relevant work as a restaurant manager "as it is generally performed in the national economy." *Id.* at 72-78, 84.

On June 1, 2017, Plaintiff visited Dr. Megan Meier at Oklahoma Sports and Orthopedics Institute for his "low back and neck pain." *Id.* at 613. Dr. Meier observed Plaintiff's condition had deteriorated over the past six months "after moving furniture." *Id.* Plaintiff complained of pain and numbness in his neck, back, and extremities, along with weakness and difficulty walking. *Id.* A physical examination of his C-Spine revealed "pain with all [range of motion]," very painful extension, positive "Spurling" bilaterally, and "full strength UE's throughout and intact sensation." *Id.* at 614. Examination of Plaintiff's hips revealed no pain with range of motion. *Id.* at 614-15. He had a positive straight leg raise with full strength in his lower extremities. *Id.* at 615. Dr. Meier diagnosed Plaintiff with "[w]orsening chronic C-spine and L-spine pain secondary to degenerative disc and joint disease with

radiculopathy." *Id.* at 615. She referred Plaintiff for an MRI and prescribed pain medication. *Id.*

Plaintiff's June 5, 2017 cervical spine MRI revealed "multilevel cervical spondylosis" with "retrolisthesis of C5-6 with disc bulge flattening cord without edema of the cord" and some disc bulging at C3-4 and C4-5." *Id.* at 612, 618. The lumbar spine MRI revealed "[m]ultilevel degenerative disc and posterior facet joint disease, most significant at L4-5 and L5-S1 levels." *Id.* at 620. Also noted was an "L5-S1 level disc desiccation with large circumferential disc bulge" contributing to "severe lateral recess stenosis with mass effect on the right pre-foraminal S1 nerve root." *Id.* There was "mild thickening of the right pre-foraminal S1 nerve" which was "compatible with radiculopathy," "multiple levels of neural foraminal narrowing," and "partially visualized posterior disc pathology." *Id.* at 620-21.

When Plaintiff returned to see Dr. Meier on June 19, 2017, she noted Plaintiff was "very apprehensive" about surgery and wanted to discuss any remaining conservative options. *Id.* at 611. Dr. Meier did not repeat her physical examination of Plaintiff's back and neck because the prior examination had worsened his symptoms. *Id.* at 612. Noting Plaintiff had "tried and failed most conservative options" and was still "very limited by his pain," Dr. Meier assessed Plaintiff's condition as "[w]orsening chronic C-spine

10

and L-spine pain secondary to degenerative changes and disc bulges causing radiculopathy." *Id.*

Finally, on June 29, 2017, Plaintiff visited Dr. de la Garza for a consultation. *Id.* at 625. Dr. de la Garza's physical examination of Plaintiff revealed "limited flexion, extension and rotation" of both his neck and back. *Id.* Plaintiff exhibited a "positive Spurling's sign on the right cervical portion," "intrinsic weakness," and a "mildly positive Hoffman's sign." *Id.* He also exhibited a positive straight leg raise on the right. *Id.* at 626. Dr. de la Garza diagnosed Plaintiff with "[c]ervical spondylosis with stenosis, cervical radiculopathy C4 to C6," and [l]umbar spondylosis with stenosis and lumbar radiculopathy, L5-S1." *Id.* He noted Plaintiff was "not doing well" and recommended a "C4 to C6 anterior cervical discectomy and fusion procedure" for his cervical spine and a possible "reconstructive effort at L5-S1" for his lumbar spine. *Id.*

## IV. Analysis.

### A. Whether the ALJ properly considered all the medical evidence.

Plaintiff contends that the ALJ failed to properly consider the entirety of the medical evidence when he established Plaintiff's RFC. The court agrees.

11

When referencing Plaintiff's most recent medical records the ALJ noted Plaintiff's June 1, 2017, visit to Dr. Meier. *Id.* at 19. The ALJ stated Dr. Meier conducted no neck or back examination due to "worsened symptoms." *Id.*

The ALJ made an incorrect observation. The record reflects Plaintiff's neck and back examination on June 1 revealed significant range of motion pain which Dr. Meier diagnosed as a "worsening" spine condition. *Id.* at 614-15. In addition, the June 5th MRI showed, among other things, "multilevel cervical spondylosis" and "[m]ultilevel degenerative disc and posterior facet joint disease" which was "consistent" with Plaintiff's "radicular pain." *Id.* at 612, 618, 620. *See, e.g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting "the new MRI evidence [was] obviously crucial to an evaluation of whether objective medical evidence support[ed] claimant's allegations of pain and limitation"). The ALJ did not mention this MRI.

During Plaintiff's second visit to Dr. Meier on June 19, 2017, which the ALJ referenced as occurring on June 1, Dr Meier again noted Plaintiff's "worsening" condition as well as the MRI results showing "disc bulges with radiculopathy." *Id.* at 19, 612.[4] The ALJ did properly reference Plaintiff's visit to Dr. de la Garza, noting Plaintiff's "limited flexion, extension, and rotation" in his neck and back and Dr. de la Garza's surgical recommendation. *Id.* at 19.

---

[4] Exhibit 14F includes all the records of Plaintiff's two visits to Dr. Meier and his MRI results. AR 611-621.

12

The 2017 records clearly indicate Plaintiff's condition had not greatly improved based on his earlier treatment. Nonetheless, the majority of the ALJ's assessment of Plaintiff's RFC did not include an analysis of his most recent medical assessments but instead relied upon Plaintiff's earlier treatment, or lack thereof, which the ALJ characterized as "essentially no neck or back treatment":

> The objective medical evidence shows that claimant had a motor vehicle accident on May 10, 2015, with significant findings on neck MRI that resulted in Dr. Remondino's surgical recommendation; however, this was never performed. Claimant had a couple of rounds of physical therapy. Then, he had essentially no neck or back treatment thereafter. His neck or back treatment is rarely mentioned in medical evidence of record. The focus of care appears to have been for seasonal allergies and allergy shots (see medical evidence of record by Dr. Briggs at Exhibits 7F and 12F). The low back complaint is not prominently mentioned again until June 2017, after an apparent aggravating injury when moving furniture (Exhibit 14F, page 3). Like Dr. Remondino two years earlier, Dr. de la Garza also recommends a 2 level cervical fusion based on imaging studies (Exhibit 15F, page 3).

*Id.* at 23-24. The ALJ's only acknowledgement of Plaintiff's apparent worsening condition was a notation that Plaintiff had "moved furniture after his alleged onset date" and such activity did not support the Plaintiff's "alleged functional limitations." *Id.* at 24.

Plaintiff argues the ALJ "made little attempt" to explain how the evidence supported his conclusions. Doc. 19, at 14. Defendant responds by admitting that "the evidence was equivocal in this case," but argues the "ALJ

13

had the authority to resolve the evidentiary conflicts." Doc. 27, at 6. But the record does not demonstrate that the ALJ resolved the conflicts. Instead, in crafting Plaintiff's RFC, the ALJ relied almost exclusively on both Dr. Budrich's and Dr. Metcalf's 2016 assessments of Plaintiff's condition, giving them both great weight and explaining their opinions were "consistent with the record as a whole." AR 24. Defendant attempts to justify the ALJ's significant reliance on these two doctors' opinions by arguing that they were "the only two acceptable medical sources who offered opinions of Plaintiff's specific physical functional abilities." Doc. 27, at 7. Defendant's argument, however, misses the point that neither doctor had considered Plaintiff's worsening condition when they crafted their opinions and the ALJ made no attempt to reconcile this fact with the evidence of record. This was error. *See, e.g., Guice v. Comm'r, SSA*, 785 F. App'x 565, 573-74 (10th Cir. 2019) (holding it was error for the ALJ to fail to acknowledge or discuss a "key limitation" in the state-agency reviewing psychologists' opinions which were based on stale medical evidence and advising that the ALJ should have explained how those opinions were consistent with the medical evidence of record, "including the medical evidence that the state-agency psychologists had no opportunity to review").

"The record must demonstrate that the ALJ considered all of the evidence . . . ." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Though

14

"an ALJ is not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1009-10. An ALJ may not pick and choose among uncontroverted evidence, taking only those parts that are favorable to a finding of nondisability but instead must consider all significantly probative evidence in the record. *See Hardman*, 362 F.3d at 681 ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

The ALJ's decision in this case does not meet these standards. Not only did the ALJ apparently fail to fully consider Plaintiff's most recent MRI and medical assessments, he then substantially relied upon two opinions rendered without the benefit of Plaintiff's most recent medical records. Because the ALJ failed to reconcile his RFC assessment with Plaintiff's most recent medical assessments, the ALJ did not demonstrate that he properly considered all of the evidence. Accordingly, the case should be remanded for further consideration.

### B. The court need not address the additional claim of error.

Because remand is warranted on the issue of the ALJ's review of the medical evidence, the undersigned need not address Plaintiff's other claim of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will

not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## V. Conclusion.

The court **REVERSES and REMANDS** the Commissioner's decision.

**ENTERED** this 2nd day of January, 2020.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE